UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JIMMIE L. JONES, JR.,

        Plaintiff,

vs.                              Case No. 3:15-cv-1482-J-39JBT

DR. SCHLOFMAN,[1]

        Defendant.

## **ORDER**

### I. Status

Plaintiff Jimmy L. Jones, Jr., an inmate of the Florida Department of Corrections (FDOC), filed a civil rights Complaint (Doc. 1) on December 11, 2015, pursuant to the mailbox rule.[2] In its February 9, 2018 Order (Doc. 61), the Court denied Defendant Schlofman's Motion to Dismiss Plaintiff's Complaint (Doc. 35). In its March 20, 2018 Order (Doc. 63), the Court granted Defendants Dr. Berrios Velez, Janet Carpenter, and Dr. Vilchez's Motion for Summary Judgment (Defendants' Motion) (Doc. 39) with respect to Plaintiff's deliberate indifference claims based on his complaints of nausea, stomach and back pain, vomiting, headaches, anxiety, and sudden episodes of anger and confusion, his Prednisone

---

[1] The **Clerk** shall correct Defendant Dr. Schlofman's surname from Dr. Schloffman to Dr. Schlofman.

[2] The Court references the page numbers assigned by the electronic filing system.

prescription, and the denial of replacement glasses.³  Id. at 28.
The Court also granted Defendants' Motion with respect to
Plaintiff's supervisor liability claim against Dr. Vilchez.  Id.
The Court dismissed these deliberate indifference and supervisor
liability claims with prejudice and directed the Clerk to terminate
Defendants Dr. Berrios Velez, Janet Carpenter, and Dr. Vilchez from
the action.  Id. at 28-29.

Defendant Howard Schlofman, M.D.'s Motion for Summary Judgment
(Motion) (Doc. 82) is pending before the Court.⁴  Plaintiff filed
a Brief in Opposition to Defendant's Summary Judgment Motion
(Response) (Doc. 87) and a Declaration (Doc. 88).  See Summary
Judgment Notice (Docs. 83).  Plaintiff names Defendant Dr.
Schlofman in his individual and official capacity.  Complaint at 7.
Plaintiff raises one claim against Defendant Dr. Schlofman, a claim
of deliberate indifference to a serious medical need through the
doctor's failure or refusal to complete an eye examination to

---

³ The Court, construing Defendants' Motion as a motion to dismiss for failure to exhaust administrative remedies, dismissed without prejudice Plaintiff's deliberate indifference claims based on his "infectious skin disease," Juvenile Rheumatoid Arthritis, and "denied access to an orthopedic specialist." (Doc. 63 at 28). With respect to the deliberate indifference claims based on Plaintiff's complaints of nausea, stomach and back pain, vomiting, headaches, anxiety, sudden episodes of anger and confusion, his Prednisone prescription, and the denial of replacement glasses, the Court, construing Defendants' Motion as a motion to dismiss for failure to exhaust administrative remedies, denied Defendants' Motion.  Id.

⁴ The supporting exhibits are found in documents 39 and 40.

determine the extent of Plaintiff's visual impairment, make a diagnosis, and prescribe proper eyeglasses. Id. at 20. He raises this claim pursuant to the Eighth and Fourteenth Amendments. Id. at 5. As relief, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. Id. at 23. He also seeks costs and any additional relief that the Court deems just, proper, and equitable. Id.

## II. The Complaint

Plaintiff alleges that while confined at Suwannee Correctional Institution, he accessed the sick call procedure on August 27, 2014, concerning his incurable, degenerative eye disease which had already rendered him blind in his right eye. Complaint at 5, 7.[5] He informed the nurse he was seeing flashes of light in his left eye, a sure indication of his losing his sight in his left eye. Id. On August 27, 2014, Plaintiff informed the sick call nurse he was on eye drops. Id. at 7-8. On or about May 21, 2015, Plaintiff accessed sick call, and after making various medical complaints, informed the three nurses that he was blind in his right eye, with poor vision in his left eye due to a degenerative eye disease, and

---

[5] See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (per curiam) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations."). See Complaint at 23.

3

he needed a new pair of eyeglasses because his pair had been stolen almost a week prior. Id. at 10. A sick call nurse told Plaintiff he would not get new prescription glasses for another year. Id. at 11. Plaintiff states he cannot properly function without eyeglasses, and he experienced many problems. Id. at 11.

On July 30, 2015, Plaintiff wrote a medical request to Mrs. Carpenter referencing his May 21, 2015 sick-call request for prescription glasses and seeking for her to arrange for Plaintiff to be provided with glasses. Id. Mrs. Carpenter responded on July 31, 2015, stating that Plaintiff has an appointment with the eye doctor, but to be patient with scheduling. Id. She also advised Plaintiff that readers were available in the canteen. Id. Plaintiff wrote a grievance of medical nature to the Secretary of the FDOC, raising various medical complaints, including his efforts to obtain eyeglasses. Id. at 13-14. The Secretary denied the grievance. Id. at 14.

On September 16, 2015, Plaintiff received a medical call out. Id. at 16. Defendant Dr. Schlofman dilated Plaintiff's eyes with eye drops, but upon checking the file, Dr. Schlofman discovered Plaintiff had not completed the request form prior to the appointment to have money withdrawn from his inmate account to pay for glasses. Id. Since Plaintiff had not complied with Corizon's policy, Dr. Schlofman informed Plaintiff that he could not give Plaintiff an eye examination for glasses without the form. Id.

Dr. Schlofman told Plaintiff to wait until October, and Corizon's contract may not be renewed. Id. Dr. Schlofman suggested Plaintiff return in a month, and if Corizon were no longer the contract provider, Plaintiff would not have to pay for glasses. Id.

### III. Count Four

In Count Four of the Complaint, Plaintiff raises a claim of deliberate indifference against Defendant Dr. Schlofman, claiming the doctor refused to complete an eye examination to determine the extent of Plaintiff's visual impairment, make a diagnosis, and prescribe proper eyeglasses. Complaint at 20. Plaintiff contends his medical care was delayed and denied because he did not pay for the glasses prior to the eye appointment. Id. He asserts he suffered visual damage and permanent impairment. Id. He also states he made daily mistakes because he could not accurately determine distance, and the lack of eyeglasses hindered him from reading, watching television, and participating in social and recreational activities. Id. at 20-21. Finally, he claims he suffered mental distress. Id. at 21.

### IV. Summary Judgment Standard

"Summary judgment is appropriate only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Fed. R. Civ.

P. 56(a)). "If the moving party meets this burden, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.'" Ekokotu v. Federal Exp. Corp., 408 F. App'x 331, 333 (11th Cir.) (per curiam) (quoting Fickling v. United States, 507 F.3d 1302, 1304 (11th Cir. 2007)), cert. denied, 565 U.S. 944 (2011).

## V. Defendant Dr. Schlofman's Motion

Defendant Dr. Schlofman submits he is entitled to summary judgment with respect to Plaintiff's Eighth Amendment claim of deliberate indifference to a serious medical need. Motion at 1. Defendant Dr. Schlofman contends Plaintiff's claim is governed solely by the Eighth Amendment, not the Fourteenth Amendment. Id. at 7-8. Finally, Defendant Dr. Schlofman asserts Plaintiff has failed to establish an Eighth Amendment violation. Id. at 5.

## VI. Plaintiff's Response

Plaintiff, in his Response, argues Defendant Schlofman should have provided an eye examination for Plaintiff's serious medical need because Plaintiff requested a necessary eye examination as his vision had become worse and his visual acuity needed to be reassessed. Response at 3. Plaintiff states he was suffering from a degenerative disease and needed a new evaluation. Id. at 3-4.

Although Plaintiff submitted a Declaration (Doc. 88), it is not dated and does not meet the requirements of 28 U.S.C. § 1746 (Unsworn declarations under penalty of perjury) and will not be

6

considered by the Court; however, as noted previously, Plaintiff's Complaint meets Rule 56's requirements for affidavits and sworn declarations.

## VII. The Eighth Amendment

The Eighth Amendment is interpreted as prohibiting deliberate indifference to serious medical needs of prisoners. <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976). Plaintiff, at the time of the incident, was a convicted prisoner. Thus, his rights arise under the Eighth Amendment, not the Fourteenth Amendment. As such,

> The Eighth Amendment's prohibition against "cruel and unusual punishments" protects a prisoner from "deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state a claim of unconstitutionally inadequate medical treatment, a prisoner must establish "an objectively serious [medical] need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." <u>Taylor v. Adams</u>, 221 F.3d 1254, 1258 (11th Cir. 2000).

<u>Kuhne v. Fla. Dep't of Corr.</u>, 745 F.3d 1091, 1094 (11th Cir. 2014).

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d

7

1176, 1187 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002)).

To demonstrate deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. See Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (citation omitted). To establish deliberate indifference to a serious medical need, Plaintiff must shoulder three burdens; he must satisfy the objective component (showing he had a serious medical need), the subjective component (showing the official acted with deliberate indifference to his serious medical need), and causation (showing the injury was caused by the Defendant's wrongful conduct). Mann, 588 F.3d at 1306-07. In order to prove the subjective component, a plaintiff is required to demonstrate: (1) the official's subjective knowledge of a risk of serious harm; (2) the official's disregard of that risk; (3) by conduct that is more than **mere negligence**.[6] Daniels v. Jacobs, No. 17-14429, 2018

---

[6] Defendant Dr. Schlofman maintains the third burden of the subjective component requires a showing of conduct that is more than gross negligence. See Motion at 5, 7-8. Based on Farmer v. Brennan, 511 U.S. 825, 847 (1994) and its progeny, the standard is one of more than mere negligence. Although the Eleventh Circuit has, at times, referred to the standard as being one of more than gross negligence, the Eleventh Circuit recently clarified its position that the standard in McElligott v. Foley, 182 F.3d 1248, 1255-59 (11th Cir. 1999) (employing the "more than mere negligence" standard) is the appropriate one, as it is more consistent with Farmer, and McElligott is the first Eleventh Circuit case, following Farmer, to address the question of degree of culpability pursuant to Farmer, and consequently must be followed. Melton v. Abston, 841 F.3d 1207, 1223 n.2 (11th Cir. 2016) (per curiam). Recognizing the authority of Farmer, and relying on the standard

8

WL 4998130, at *8 (11th Cir. Oct. 16, 2018) (per curiam) (emphasis added). See Nam Dang, by and through Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1280 (11th Cir. 2017) (finding a pretrial detainee must prove these three factors to establish deliberate indifference); McLeod v. Sec'y, Fla. Dep't of Corr., 679 F. App'x 840, 843 (11th Cir. 2017) (per curiam) (same for a state prisoner).

A plaintiff must demonstrate that a defendant's responses to his medical needs were poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in treatment, or even medical malpractice actionable under state law. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (citing Estelle, 429 U.S. at 105-106), cert. denied, 531 U.S. 1077 (2001). It is important to recognize,

> "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989) (citations omitted). However, medical treatment violates the Constitution only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).

Nam Dang, by and through Vina Dang, 871 F.3d at 1280.

---

subsequently employed in McElligott, the Court, in this opinion, heeds the Eleventh Circuit's repeated admonitions to follow McElligott and employ the "more than mere negligence" standard.

9

In the prison context, the Court has to distinguish between matters of professional medical judgment and evidence of disputed facts. Beard v. Banks, 548 U.S. 521, 530 (2006). If it is a matter of professional judgment, for example a decision not to pursue a particular course of diagnosis or treatment, it does not represent cruel and unusual punishment. Estelle, 429 U.S. at 107-108. Moreover, a dispute over adequacy of treatment sounds in tort law, not constitutional law. In order to show a deprivation of a constitutional dimension based on any delay in providing medical treatment, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1187-88.

### VIII. Findings of Fact and Conclusions of Law

In his Complaint, Plaintiff alleges he has an "uncurable [sic] active eye degenerating disease." Complaint at 7. It is quite clear that Plaintiff is not claiming deliberate indifference for Defendant Dr. Schlofman's failure to treat or cure him of this degenerative disease.[7] Instead, Plaintiff is complaining that Defendant Dr. Schlofman failed to complete an eye examination and prescribe eyeglasses because Plaintiff had not completed a form and pre-paid for replacement glasses.

---

[7] The record shows Dr. Velez was treating Plaintiff for the degenerative disease. (Doc. 40-1 at 3-4).

In his Motion, Defendant Dr. Schlofman contests Plaintiff's assertion of deliberate indifference to a serious medical need based on the doctor's failure to complete an eye examination for eyeglasses on September 16, 2015. Complaint at 16. The record shows, less than six months before that date, Dr. Schlofman evaluated Plaintiff's eyes on March 27, 2015, finding Plaintiff did not need a change in his prescription. (Doc. 40-2 at 97).

Plaintiff desired to obtain replacement eyeglasses for eyeglasses he claimed were stolen, as he was having difficulty seeing without his eyeglasses. Plaintiff was told that he had to follow a procedure to pre-pay for replacement eyeglasses, as he was not due to receive new eyeglasses in September, 2015. In order to obtain new eyeglasses prior to the routine replacement date, Plaintiff had to complete a request form and pay for the glasses out-of-pocket. (Doc. 39-9 at 5). When Plaintiff saw Dr. Schlofman on September 16, 2015, Plaintiff had not completed and submitted the appropriate form. The record shows that once Plaintiff completed the form and complied with the request process, he obtained replacement eyeglasses.

Significantly, Plaintiff has failed to demonstrate any delay in receiving eyeglasses worsened his degenerative condition.[8]

---

[8] Dr. Velez attests Plaintiff has a history of sarcoidosis, an incurable, inflammatory disease involving growth of inflammatory cells in his body, including the eyes. Affidavit of Carmelo Berrios Velez, M.D. (Doc. 40-1 at 3). The disease caused Plaintiff's blindness in his right eye and damage to his left eye.

Plaintiff has offered no supporting medical evidence showing a failure to prescribe eyeglasses would lead to or led to visual damage. Thus, Plaintiff has not shown a serious medical need by showing that failure to prescribe eyeglasses worsened his condition. See Mann, 588 F.3d at 1307. He has failed to satisfy the objective component, showing he had a serious medical need that Defendant Dr. Schlofman disregarded with deliberate indifference.[9] Additionally, Plaintiff has failed to show Dr. Schlofman acted with deliberate indifference to a serious medical need, the subjective component. As Plaintiff had an eye evaluation for eyeglasses less

---

Id. Dr. Velez prescribed Prednisone, a steroid, to reduce inflammation. Id. at 3-4.

[9] The Court finds Plaintiff has not shown a serious medical need. Although he states in his Complaint he had lack of depth perception and made mistakes performing daily tasks, he has not provided any operative facts that he experienced events due to lack of depth perception that actually resulted in injury. (Doc. 1 at 21) (Doc. 39-8 at 3) (Doc. 40-2 at 17). See Loque v. Johnson, No. CV410-240, 2012 WL 2863450, at *2 (S.D. Ga. July 11, 2012) (finding failure to state a claim for lack of eyeglasses based on a bare allegation that eyeglasses were withheld), report and recommendation adopted by 2012 WL 3096051 (S.D. Ga. July 30, 2012). Assuming arguendo Plaintiff has satisfied the objective component, he has not satisfied the subjective component. Moreover, Dr. Schlofman did not inflict punishment by any failure to perceive a risk or alleviate a significant risk that he should have perceived but did not. Farmer, 511 U.S. at 837-38; Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999) (citation omitted) (same); Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). Dr. Schlofman's actions did not exhibit obduracy and wantonness. At most, Plaintiff has shown poor exercise of medical judgment in Dr. Schlofman's failure to complete the examination, make a diagnosis, and prescribe eyeglasses. Daniels v. Williams, 474 U.S. at 330-33. Inadequate treatment is nothing more than medical negligence and does not rise to the level of a constitutional violation.

than six months prior to the September 16, 2015 appointment, Dr. Schlofman's decision to terminate the September 16, 2015 appointment for an eye evaluation for eyeglasses does not shock the conscience and is not intolerable to fundamental fairness.[10] See Nam Dang, by and through Vina Dang, 871 F.3d at 1280.

Indeed, the decision to terminate an evaluation is a matter of professional judgment. Here, Dr. Schlofman made the decision to terminate an evaluation or pursue a particular course of diagnosis because Plaintiff had not completed the required form to obtain an evaluation prior to the routine replacement date. See Estelle, 429 U.S. at 107-108. Here, at most, Plaintiff is complaining about the adequacy and frequency of treatment, a matter which sounds in tort law, not constitutional law.

Upon review of the medical records, it shows Plaintiff is blind in his right eye and was seeing floaters in his left eye, was sensitive to light, and had cloudy vision. (Doc. 40-2 at 96). Dr. Berrios requested an optometry evaluation on November 7, 2014. Id. Plaintiff was scheduled for an appointment on March 18, 2015. Id. On March 27, 2015, Dr. Schlofman saw Plaintiff for the optometry

---

[10] It is significant Plaintiff was advised readers were available in the canteen, an inexpensive option to aid in reading, watching television, and other activities requiring near visual acuity. Additionally, Plaintiff has not shown he did not have the money to purchase either readers or replacement glasses at the time his glasses were stolen. Of import, Plaintiff purchased replacement glasses after completing the appropriate request form.

consultation and concluded no change was needed in his prescription. Id. at 97. The doctor advised Plaintiff to cut down on contraband. Id.

On May 19, 2015, in a sick-call request, Plaintiff complained of his glasses being stolen and needing a replacement pair. Id. at 66. An administrative assistant promptly advised Plaintiff to write a request to Mrs. Carpenter for replacement glasses at a cost to Plaintiff. Id. at 64. The nurse saw Plaintiff on June 15, 2015 and discussed his request for glasses. Id. at 60. On June 16, 2015, Plaintiff wrote a sick-call request asking for a visual test for replacement glasses. Id. at 63. On June 23, 2015, a doctor requested an optometry appointment for Plaintiff. (Doc. 40-3 at 17). On July 8, 2015 and October 14, 2015, Mrs. Carpenter, the inventory coordinator, noted Plaintiff's optometry consult had been scheduled. (Doc. 40-2 at 54, 59).

Plaintiff saw Dr. Schlofman on September 16, 2015, and the doctor noted Plaintiff was not eligible for an eye examination until May, 2016, and directed Plaintiff be rescheduled to see the doctor in seven months. (Doc. 40-2 at 92). On September 21, 2015, Dr. Figueroa ordered a follow-up appointment. Id. at 98. On October 14, 2015, staff scheduled Plaintiff for a follow-up appointment on May 18, 2016. Id.

When Plaintiff grieved the matter, Dr. Vilchez, on October 20, 2015, explained in a grievance response:

14

> You have not been denied eye glasses. The eye doctor was correct in that you were not eligible for an exam for new glasses until May 2016. You are allowed a new pair of glasses every 3 years. Your glasses are part of your personal property and are your responsibility to maintain and protect the custody of the glasses in your property. Glasses being lost or stolen does not make you eligible for another free pair. You can order replacement glasses at a cost to you of $29.50 or in May 2016 you can request a new exam and new pair of free ones. Access sick call and request a replacement form for glasses, sign and return the copy, or you can send in another request and one will be attached and returned to you for signature. This will be turned into the appropriate staff and ordered.

(Doc. 39-9 at 5).

Thereafter, on November 30, 2015, Plaintiff wrote a request to Mrs. Carpenter asking that she schedule an eye examination for glasses and file necessary forms, and she responded that Plaintiff was scheduled for May 2016. (Doc. 40-2 at 21). On December 3, 2015, Plaintiff wrote Mrs. Carpenter a request for a consent form to have money removed from his inmate account to pay for the glasses. Id. at 17. On December 8, 2015, Plaintiff signed a glasses request form. Id. at 53. Mrs. Carpenter responded to Plaintiff's December 3, 2015 request on December 17, 2015, noting she had submitted the signed form and advising Plaintiff that it would take approximately three weeks to receive the glasses. Id. at 17. Plaintiff received eyeglasses on January 8, 2016. (Doc. 40-2 at 46).

Plaintiff has not placed verifying medical evidence to establish the detrimental effect of any delay in receiving eyeglasses. See Hill, 40 F.3d at 1187-88. Plaintiff received the scheduling of an optometry consultation a month after the termination of his September appointment. Plaintiff was repeatedly advised that he needed to sign a form to release the funds from his inmate account to obtain replacement glasses. Within a month of signing a glasses request consent form, Plaintiff received eyeglasses.

Although Plaintiff may believe that a visual acuity test or other examination should have been done at an earlier date, the decision to terminate an appointment, or like measures, does not constitute cruel and unusual punishment under the Eighth Amendment. Estelle, 429 U.S. at 104; Belford v. Gonzalez, No. 3:15-CV-878-J-34PDB, 2016 WL 1732632, at *2 (M.D. Fla. May 2, 2016) (recognizing the question as to whether a doctor should have employed additional diagnostic techniques or treatment is a classic example of a matter of medical judgment and not an Eighth Amendment violation). See Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (same). Notably, Plaintiff had an eye examination less than six months prior to the September appointment with Dr. Schlofman, and Plaintiff has failed to show any detrimental effect on his eye condition by the delay in receiving an examination and new prescription in September; "[he] has failed to present any evidence

showing Dr. [Schlofman] knew that the manner in which he provided treatment created a substantial risk to [Plaintiff's] health and with this knowledge consciously disregarded the risk." Clegg v. Doctor Bradford, No. 2:16-CV-232-WC, 2018 WL 6004675, at *7 (M.D. Ala. Nov. 15, 2018) (addressing a claim of a doctor's failure to provide a new pair of prescription eyeglasses in violation of the Eighth Amendment).

At most, Plaintiff has presented a claim of negligence or medical malpractice. See Granda v. Schulman, 372 F. App'x 79, 83 (11th Cir. 2010) (per curiam) (discussing Estelle and its holding, and distinguishing medical malpractice from an Eighth Amendment violation). Even assuming Plaintiff's treatment is considered less than adequate or medical malpractice, "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner.'" Harris v. Coweta Cty., 21 F.3d 388, 393 (11th Cir. 1994) (citing Estelle, 429 U.S. at 106). To the extent Plaintiff is claiming he should have received an earlier eye examination and a new prescription for eyeglasses, the record shows the treatment he received does not amount to deliberate indifference to a serious medical need. Here, the record is devoid of evidence showing Dr. Schlofman acted with deliberate indifference to a serious medical need experienced by Plaintiff. Defendant Dr. Schlofman, through the documentary evidence, has met his burden of showing there is no genuine issue

of fact concerning whether he was deliberately indifferent to Plaintiff's serious medical needs.

In conclusion, Plaintiff has failed to shoulder the burden of the objective and subjective components of deliberate indifference through his failure to show he had a serious medical need that was not addressed by Dr. Schlofman and Dr. Schlofman acted with deliberate indifference to a serious medical need, or satisfy the causation component, as Plaintiff has not shown any injury was caused by any wrongful conduct of Dr. Schlofman. Plaintiff has failed to demonstrate the responses to his need for replacement eyeglasses was poor enough to constitute an unnecessary and wanton infliction of pain. Dr. Schlofman's treatment of Plaintiff was not so grossly incompetent, inadequate, or excessive as to shock the conscience or to be considered intolerable to fundamental fairness and Dr. Schlofman's Motion is due to be granted.

Therefore, it is now

**ORDERED:**

1. Defendant Howard Schlofman, M.D.'s Motion for Summary Judgment (Doc. 82) is **GRANTED**, and the **Clerk** shall enter judgment for Defendant Howard Schlofman, M.D., and against Plaintiff Jimmie L. Jones, Jr.

2. The **Clerk** shall enter judgment for Defendants Dr. C. Berrios Velez, Janet Carpenter, and Dr. Denis A. Vilchez, and against Plaintiff Jimmie L. Jones, Jr. See Order (Doc. 63).

3. The **Clerk** shall terminate all pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of November, 2018.

_____
BRIAN J. DAVIS
United States District Judge

sa 11/28
c:
Jimmie L. Jones, Jr.
Counsel of Record